749 So.2d 1208 (1999)
R.J. CAMPBELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00083-COA.
Court of Appeals of Mississippi.
September 7, 1999.
*1209 K. Elizabeth Davis, Greenwood, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. R.J. Campbell was convicted in the Carroll County Circuit Court of deliberate design murder. On appeal, he argues that the indictment was fatally flawed, and that the trial court erred in admitting an unduly prejudicial photograph of the victim into evidence. Campbell also challenges both the weight and sufficiency of the evidence. We affirm.

FACTS
¶ 2. On August 28, 1997, James Cain and some friends sat on the steps in front of an apartment at the Vaiden Rental Apartments, drinking beer. The group ran out of beer, so Cain and three others left to purchase more. As Cain walked down the sidewalk toward the parking lot, R.J. Campbell approached. The two had argued the previous Sunday and Wednesday about Cain's girlfriend. Campbell grabbed Cain from behind and placed him in a headlock. He then struck Cain twice on the top of the head with his .40 caliber handgun. As Cain fell, he reached into his pocket and pulled out his own weapon. He fired one shot into the ground and then fired the remaining four shots at Campbell. At least two of the bullets struck Campbell in the thigh. Cain ran out of ammunition and pulled the trigger twice more. The weapon made what witnesses described as two "clicking" sounds. Campbell then pointed his weapon at the back of Cain's head and fired.
¶ 3. Campbell was indicted for the deliberate design murder of James Cain. A *1210 Carroll County Circuit Court jury found him guilty. He was sentenced to life in the custody of the Mississippi Department of Corrections.

DISCUSSION

I. Indictment
¶ 4. Campbell complains that the trial court erroneously denied his motion to quash the indictment. In his motion, Campbell alleged that the indictment had these flaws: (1) it failed to allege the judicial district in which it was brought, (2) it failed to state the section and subsection of the Mississippi Code of the offense with which he was charged, and (3) the indictment did not charge that he "did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased." On appeal, Campbell challenges the indictment on only the first and second grounds.

A. Judicial district
¶ 5. An indictment must include the elements of the offense charged and a plain, concise and definite written statement of the essential facts constituting the offense. Peterson v. State, 671 So.2d 647, 653 (Miss.1996). In addition and not as a substitute for those provisions, there are seven formal elements that must be included in the indictment, including "the county and judicial district in which the indictment is brought...." URCCC 7.06.
¶ 6. Campbell complains that the body of the indictment against him failed to state the judicial district in which it was brought. It is entitled "Indictment For The Offense Of Murder § 97-3-19." Immediately below, in capital letters and bold print appear the words "County Of Carroll, Second Judicial District." The body of the indictment alleges that "R.J. Campbell late of the Second Judicial District of Carroll County, Mississippi on or about the 28th day of August, 1997, in the county, judicial district, and state aforesaid did wilfully, unlawfully, feloniously, and with deliberate design to effect death, kill and murder JAMES CAIN a human being, by then and there shooting the said JAMES CAIN with a gun, against the peace and dignity of the State of Mississippi...."
¶ 7. Apparently, Campbell takes issue with the use of the phrase "in the county, judicial district, and state aforesaid." The use of the "aforesaid" is sufficient. The major purpose of an indictment is to furnish the accused such a description of the charges against him as will enable him to adequately prepare his defense. Smith v. State, 724 So.2d 280, 296 (Miss.1998). Campbell was provided with unambiguous notice of the judicial district from which the indictment originated and where he allegedly committed the crime.

B. Failure of indictment to list subsection of statute
¶ 8. A statute provides that "[n]o person shall be tried for [1] capital murder, or [2] any other crime punishable by death as provided by law, unless such offense was specifically cited in the indictment returned against the accused by setting forth the section and subsection number of the Code defining the offense alleged to have been committed by the accused." Miss.Code Ann. § 99-17-20 (Rev.1994) (bracketed numbers added). The indictment did not contain the Code subsection for deliberate design murder but the trial judge refused to quash the indictment.
¶ 9. Campbell was not charged with an offense punishable by death under phrase [2], but he is arguing that deliberate design murder is a capital murder offense under phrase [1]. The argument equates "capital murder" in this section with "capital offenses" or "capital cases" as defined in Mississippi Code Section 1-3-4 (Rev.1998). Title 1, chapter 3 of the Code contains definitions that apply "to every statute, unless its general object, or the context of language construed, ... indicate that a different meaning or application was intended" from that in Title 1. Miss.Code Ann. § 1-3-1 (Rev.1998). The definition of a "capital case" or "capital offense" is a *1211 crime "punishable by death or imprisonment for life" in the penitentiary; the statute then states that "`capital murder' when used in any statute shall denote criminal cases, offenses, and crimes punishable by death, or imprisonment for life....". Miss.Code Ann. § 1-3-4 (emphasis added).
¶ 10. Contrasted with this definition is another section of the Code that explicitly defines "capital murder" as any one of eight specific homicides, including murder of a police officer, murder by someone under a life sentence, and contract murders, among others. Miss.Code Ann. § 97-3-19(2)(a)-(h) (Supp.1998). The deliberate design murder of which Campbell was convicted is not described in the capital murder subsection, but is listed earlier in the same statute as simply "murder." Miss.Code Ann. § 97-3-19(1)(a).
¶ 11. Campbell's argument is simply this: the definition statute means that "capital murder" is any criminal offense punishable by death "or life imprisonment," and if either penalty is a possibility then the crime is capital murder. As already stated, deliberate design murder is not punishable by death but only by life imprisonment. Campbell argues that the offense should be defined as capital murder under section 1-3-4. If it is, and this is the key to the argument, the failure of the indictment to follow section 99-17-20 and list the relevant subsection of the murder statute means that reversible error occurred in failing to quash the indictment.
¶ 12. To understand what section 99-17-20 means, we first note that it is a twenty-five year old enactment adopted in response to United States Supreme Court decisions in the early 1970's striking down most death penalty statutes. The Mississippi Supreme Court explained the demise of this state's statute. Hudson v. McAdory, 268 So.2d 916, 919 (Miss.1972), invalidating Miss.Code § 97-3-21 (1972). In 1974 the legislature passed the definition statute, section 1-3-4, and the capital murder statute that became section 97-3-19; a provision making death the mandatory sentence for capital murder became the new section 97-3-21. 1974 Miss. Laws ch. 576, §§ 1, 6 & 7. The 1974 definition of "capital murder" described it as a criminal case "punishable by death." Id. at § 1. There was no reference to "or by life imprisonment." The 1974 capital murder statute began the approach that only certain murders were capital murder. Id. at § 6(1) & 6(2). The list has grown slightly, but it has not changed much. Cf. 1974 Miss. Laws ch. 576, § 6 and Miss.Code Ann. § 97-3-19(2) (Supp.1998).
¶ 13. That 1974 enactment also promulgated the first version of the statute that is central to Campbell's argument, section 99-17-20. That statute requires that the subsection of the relevant murder statute be listed in indictments for capital murder or other crimes punishable by death. 1974 Miss. Laws ch. 576, § 6(3). Of some importance, the language of the 1974 enactment requiring the enumeration of the specific subsection of the relevant statute appeared in the legislation immediately after the capital murder amendment with its subsections (a)-(f). Id. at §§ 6(2) & 6(3).
¶ 14. From the first, the definition section has created some ambiguity by referring to "capital murders" as criminal offenses punishable by death. At least one crime punishable by death included in the same 1974 bill did not involve a homicide, namely capital rape. 1974 Miss. Laws ch. 576, § 8 (amended to remove death sentence in 1998 Miss. Laws ch. 549, § 2), codified Miss.Code Ann. § 97-3-65(1) (Supp.1998). It would be bizarre to put capital rape into the category of "capital murder." It was a capital offense, but not logically a capital murder. Whether the death penalty was constitutional for some rapes is not relevant here, as the point is only that "capital murder" was not logically descriptive of all offenses punishable by death.
¶ 15. Regardless of exactly how all this fit together, the fact that the 1974 definition *1212 statute limited "capital murder" to offenses punishable by death and not by life, meant that deliberate design murder was not a capital murder under the original section 1-3-4.
¶ 16. In 1977 amendments were made to most of these same statutes. 1977 Miss. Laws ch. 458. The fundamental change was that life imprisonment became optional for the jury in capital cases, and a death sentence was no longer mandatory. In other words, being convicted of a capital offense did not necessarily mean that the death penalty would be the sentence. The mandatory death sentence approach adopted in 1974, which the state supreme court said it had believed to be constitutional under Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), was found to be unconstitutional because of Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Jackson v. State, 337 So.2d 1242, 1248-51 (Miss.1976). Significant changes to the statutes here cited by Campbell resulted from the post-1974 death penalty jurisprudence. Now the definition statute was amended to state that capital offenses were the offenses punishable by death or life imprisonment. 1977 Miss. Laws ch. 458, § 6, codified as Miss.Code Ann. § 1-3-4 (Rev.1998). Section 99-17-20 still provided that the subsection number of the offense must appear in an indictment for a "capital murder," the definition of which had just been changed. 1977 Miss. Laws. ch. 458, § 10. This combination of provisions is what Campbell suggests brings deliberate design murder underneath the rubric of "capital murder."
¶ 17. This review of the origins of these terms indicates what the legislature was doing. When the requirement to indicate the statutory subsection for capital murder was first passed in 1974, "capital murder" was defined strictly as an offense punishable by death. At that time, all capital cases had mandatory death sentences. When the unconstitutionality of mandatory sentencing was decreed, the statutes were amended to state that life imprisonment was a possible sentence for a capital case. There is no reason to interpret the adjustments to these statutes as also attempting to broaden the definition of capital murder. If anything, these changes were making capital offenses fewer. We will not read an inadvertent enlargement of what was "capital murder" into the legislative actions. Such murders were the same ones as under the 1974 enactment, but the terminology was corrected where appropriate to indicate that either death or life was possible as a sentence. That change did not make deliberate design murder a capital murder
¶ 18. After the 1977 amendments, capital murder, for purposes of the requirement that the relevant subsection of the statute appear in the indictment, still was limited to those offenses under section 97-3-19(2) and any other offense in which death was a possible sentence. In other words, death "or life imprisonment" under section 1-3-4 means that each sentence must be a possibility. There was no error in failing to quash the indictment.

II. Prejudicial photograph of the deceased
¶ 19. Exhibit S-13, a photograph of the deceased's face taken immediately before his autopsy, was admitted into evidence over the objection of the defendant. Campbell argues that the photo was inflammatory and prejudicial. He further contends that the photo was not probative because the identity of the victim was not at issue and he was willing to stipulate that Cain was the individual upon whom the autopsy was performed.
¶ 20. A similar argument has previously been rejected. Noe v. State, 616 So.2d 298, 303 (Miss.1993). The defendant objected to the admission into evidence of a photograph of the face of the victim with an endotracheal tube protruding from his mouth. Noe claimed that because he was willing to stipulate to the identity of the victim, the photograph served no useful evidentiary purpose. Id. The court rejected *1213 Noe's argument, reasoning that "stipulations such as this are not an impediment to admissibility." The court went on to note that the photographs were neither inordinately gruesome nor inflammatory and that each "served a meaningful evidentiary purpose in establishing the identity of the man shot by Noe...." Id.
¶ 21. The photograph of the victim in the present case, though not pleasant, is neither gruesome nor inflammatory. No wounds are depicted. The photograph served the purpose of establishing the identity of the victim of the crime. Although Campbell may have been willing to stipulate to the victim's identity, such a willingness does not prevent the admission into evidence of photographs which have evidentiary value. The victim does not need to remain faceless to the jury. Showing who it is that has been murdered is permissible. The trial court did not err.

III. Weight and sufficiency of the evidence

A. Legal sufficiency of the evidence
¶ 22. Campbell argues that the trial court erred in not granting his motion for directed verdict, his peremptory instruction or his motion for judgment notwithstanding the verdict. Because each motion challenged the legal sufficiency of the evidence, we examine only the quantum of evidence that was presented at the last time that a motion attacked the sufficiency. Wetz v. State, 503 So.2d 803, 807 n. 3 (Miss.1987). In this case that was at the time of the motion for a JNOV.
¶ 23. The evidence is viewed in the light most favorable to the State, which also receives the benefit of any favorable inferences which may be reasonably drawn from the evidence. All credible evidence consistent with the guilty verdict is accepted as true. Johnson v. State, 642 So.2d 924, 927 (Miss.1994). We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Hart v. State, 639 So.2d 1313, 1318 (Miss. 1994).
¶ 24. Campbell was convicted of deliberate design murder. Section 97-3-21 provides that the "killing of a human being without the authority of law by any means or in any manner shall be murder ... when done with deliberate design to effect the death of the person killed, or of any human being." This requires full awareness of the act and implies careful consideration of the consequences, along with calculation and contemplation. Walters v. State, 720 So.2d 856, 867 (Miss.1998).
¶ 25. There was testimony that Campbell and Cain had argued on two prior occasions. Three witnesses testified that shortly before the murder, Campbell told them that he would kill Cain. Two others stated that they saw Campbell take a weapon from his vehicle and place it in the back of his pants before approaching Cain. Other witnesses testified that Campbell grabbed Cain from behind and struck him twice on top of the head with his weapon. Cain managed to reach his own weapon and shot Campbell at least twice in the thigh. Cain pulled the trigger twice more but the chamber was empty. At this point, Cain was unarmed and no longer able to cause serious bodily injury. Campbell then shot Cain in the back of the head anyway. This was sufficient evidence from which the jury could find that Campbell killed James Cain with the deliberate design to effect his death.

B. Weight of the evidence
¶ 26. Campbell next asserts that the trial court erred in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. He contends that the evidence mandated a finding that he shot Cain in self-defense. Alternatively, Campbell argues that at most, he was guilty of manslaughter.
¶ 27. In deciding whether the weight of the evidence can sustain the verdict, we accept as true the evidence supporting the *1214 verdict, including all reasonable inferences arising from that evidence. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court order a new trial. Collier v. State, 711 So.2d 458, 461(Miss.1998).
¶ 28. Campbell claimed that Cain had threatened him the day before. According to Campbell, Cain pulled out a gun and placed it beside him, informing Campbell that "[t]he next time I see you, it's me and you." Campbell claims that on the day of the murder, he was leaving the apartment complex when Lee Otis Tidwell, who was sitting on the steps with Cain, flagged him down. Campbell indicated that he would not go over to where the group sat because of Cain's presence. He stated that he told Tidwell to meet him in the parking lot. When he got out of his car to approach Tidwell, he was immediately struck in the leg by two bullets fired by Cain. Campbell claimed he then pulled his own weapon and fired at Cain. He claimed that he had no intention of killing Cain but was merely defending himself. Campbell denied ever striking Cain on the head with his gun.
¶ 29. The jury was given a self-defense instruction but must have determined that Campbell was not acting in self-defense when he shot Cain. They considered Campbell's version of self-defense along with the evidence that contradicted his testimony. The jury's rejection of Campbell's theory of self-defense was not against the overwhelming weight of the evidence.
¶ 30. Alternatively, Campbell contends that taking the State's case in the best light, it only supports a conviction of manslaughter. He argues that according to the State's version of events, he did not shoot Cain until after Cain shot him twice. Campbell claims that Cain's shooting him constituted reasonable provocation which should reduce murder to manslaughter. He further complains that the State presented no evidence that he had a premeditated intent to kill Cain.
¶ 31. We have already recounted the testimony that Campbell told others of his intent to kill Cain and his actions in acquiring a gun before approaching the victim. Cain responded with gunfire after being attacked by Campbell. There was evidence that Campbell was aware that Cain ran out of ammunition and shot him anyway. The jury found that the evidence supported murder, a finding that was not against the overwhelming weight of the evidence.
¶ 32. THE JUDGMENT OF THE CARROLL COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CARROLL COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.