915 So.2d 1102 (2005)
Ricky L. MOONEYHAM, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01103-COA.
Court of Appeals of Mississippi.
December 6, 2005.
James P. Johnstone, attorney for appellant.
*1103 Office of the Attorney General by John R. Henry, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. This cause was brought to trial in the Circuit Court of Pontotoc County by the State of Mississippi against Ricky L. Mooneyham for four counts of fondling in violation of Mississippi Code Annotated § 97-5-23(1) (Rev.2000). After a trial on the merits, Mooneyham was convicted on three of the four counts alleged against him and sentenced to fifteen years in the custody of the Mississippi Department of Corrections. Aggrieved by the judgment against him, Mooneyham timely appeals. Finding no error, we affirm his conviction.

FACTS
¶ 2. Ricky L. Mooneyham, is the uncle to J.R.'s two daughters, D.J. and N.J., who were born on September 19, 1991, and December 1, 1995, respectively. The two girls visited the Mooneyham home often, with Mooneyham frequently taking the girls with him on various short trips, sometimes with Mooneyham's son, and always with J.R.'s permission. On November 15, 2002, J.R. reported to the Pontotoc County Department of Human Services that D.J. told her that Mooneyham had touched her inside her panties and had rubbed on her breasts while forcing her to rub on the outside of his underwear. N.J. initially informed her mother that Mooneyham had tried to touch her as well, but was unsuccessful. An investigation by the Department of Human Services and the Pontotoc County Sheriff's Department included interviews of both girls at the Family Crisis Services in Oxford, Mississippi, medical examinations, and statements taken by the Pontotoc Sheriff's Department. As a result of the investigation, Mooneyham was arrested and charged with fondling the two girls. The grand jury indicted Mooneyham on four counts of fondling, with two counts involving each girl. After trial on the merits, Mooneyham was convicted on both counts as to D.J. and the second of the two counts against N.J. Circuit Court Judge Sharion Aycock declared a mistrial as to the first of the two counts involving N.J. Aggrieved by the decision against him, Mooneyham asserts the following error on appeal: whether the trial court erred by admitting the testimony of Carol Langendoen.

ISSUE AND ANALYSIS

I. Whether the trial court erred by admitting the testimony of Carol Langendoen.
¶ 3. Mooneyham asserts on appeal that the trial court erred in admitting expert testimony from witness Carol Langendoen, a forensic interviewer at Family Crisis Services. "Our well-settled standard of review for the admission or suppression of evidence is abuse of discretion." Mississippi Transp. Comm'n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003) (citing Haggerty v. Foster, 838 So.2d 948, 958(¶ 25) (Miss.2002)). Mooneyham argues that the State failed to establish, and the trial court failed to find, that the field of forensic interviewing was an area of expertise under the rule for such admissions adopted by the Mississippi Supreme Court in McLemore, as originally stated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as modified by Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). McLemore, 863 So.2d at 34(¶ 4). "[The] analytical framework provided by the modified Daubert standard requires the trial court to perform a two-pronged inquiry in determining *1104 whether the expert testimony is admissible under Rule 702." Id. at 38(¶ 16) (citing Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir.2002)). Under M.R.E. 702, expert testimony should be admitted only after a two pronged inquiry. First, the witness must be qualified as an expert because of the knowledge, skill, experience, training, or education he or she possesses. M.R.E. 702; see also Watkins v. U-Haul Int'l, Inc., 770 So.2d 970, 973 (¶ 10) (Miss.Ct.App.2000). Second, the witness's scientific, technical, or other specialized knowledge must assist the trier of fact. Watkins, 770 So.2d at 973 (¶ 10).
¶ 4. Carol Langendoen testified at trial that she had completed a forty-hour training course that was nationally recognized and accepted in the field of "Finding Words." The purpose of the course was to train social workers how to conduct forensic interviews of children suspected of having been sexually or physically abused, or who have witnessed a violent crime. The "Finding Words" protocol is designed to help interviewers to interview child witnesses in such a way as to avoid suggesting facts or testimony to the child. Langendoen stated that she had performed 134 interviews on children, and had completed 126 training hours in forensic interviewing, and some 215 hours in training for child abuse cases generally. Langendoen further testified that she had attended over 340 hours of continuing education in the field of child abuse, and in forensic interviewing specifically.
¶ 5. At trial, counsel for Mooneyham objected, pursuant to M.R.E. 702, to the trial court's action in certifying Langendoen as an expert. Mooneyham's objection was promptly overruled. Mooneyham argues on appeal that the testimony of Langendoen should not have been allowed for several reasons. Mooneyham asserts that Langendoen could cite no evidence of her methods ever having been independently tested, nor that she was aware of any research that could shed light on the rate of error regarding her methods. Furthermore, Mooneyham argues that her methods are unreliable as there is no single accrediting or sanctioning body for the field of forensic interviewing. Therefore, according to Mooneyham, the admission of Langendoen's testimony was highly prejudicial and speculative at best.
¶ 6. The State counters that this Court has recognized the area of investigations of sexual abuse cases, especially through interviews, as a competent area of expertise. See T.K. ex rel. D.K. v. Simpson County Sch. Dist., 846 So.2d 312, 318 (¶ 22) (Miss.Ct.App.2003) (affirming admission of licensed counselor as expert witness who had interviewed over 2,800 sexually abused children). The State further argues that Langendoen illustrated all of the factors necessary under M.R.E. 702. According to the State, Langendoen's testimony was based upon sufficient facts and data as she testified in detail as to how she conducted her interview with the victim and she testified in detail as to what the victim told her. The State also argues that Langendoen's testimony was the product of reliable principles and methods, despite the general consensus within her field that there is no single "right way" to conduct an interview. Furthermore, according to the State, Langendoen applied the principles and methods of her interviewing skills reliably to the facts of the case. We agree, and find that there was a credible basis for accepting Langendoen as an expert in the area of forensic interviewing. The admission of Langendoen's testimony was within the sound discretion of the trial court, and no abuse of that discretion is evident. This argument is without merit.
*1105 ¶ 7. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT OF CONVICTION OF THREE COUNTS OF FONDLING AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PONTOTOC COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. CHANDLER, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, IRVING, GRIFFIS AND BARNES, JJ. ISHEE, J., CONCURS IN PART.
CHANDLER, J., specially concurring.
¶ 8. The case sub judice is the first since Mississippi's adoption of the modified Daubert standard to require our Court to review the trial court's admission of nonscientific expert testimony. I concur in the majority's holding that the trial court did not abuse its discretion in allowing Carol Langendoen to render expert opinion testimony in the fields of forensic interviewing and child abuse. I write separately to provide a more thorough statement of the analysis that I believe is applicable to Langendoen's non-scientific expert testimony.
¶ 9. As stated by the majority, our supreme court has adopted the modified Daubert standard for admissibility of expert testimony under Mississippi Rule of Evidence 702. Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 39 (¶ 23) (Miss.2003). In adopting this standard, the court abandoned Mississippi's former test for the admissibility of expert testimony that simply questioned whether the principle from which the expert's opinion derived had been generally accepted in the relevant scientific community. Id. at 35 (¶ 8). The Daubert standard requires the trial court to act as a "gatekeeper" by performing a two-pronged inquiry into the admissibility of proffered expert testimony. Id. at 38 (¶ 16). Firstly, the court must find that the proffered testimony is relevant, that is, that the testimony will assist the trier of fact. Id. Secondly, the court must determine that the proffered testimony is reliable. Id. The reliability analysis must focus on the "`principles and methodology'" underlying an expert opinion, not on the conclusions generated. Id. at 37(¶ 13) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). Also, Rule 702 requires the court to determine "that the witness has applied the principles and methods reliably to the facts of the case." M.R.E. 702(3).
¶ 10. Though the application of Daubert initially was restricted to scientific testimony, in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the court expanded Daubert's application to encompass all expert testimony admissible under Rule 702. Thus, proffered non-scientific expert testimony that consists of technical or other specialized knowledge must undergo the Daubert analysis. McLemore, 863 So.2d at 37 (¶ 14). In every case, "whether testimony is based on professional studies or personal experience, the `gatekeeper' must be certain that the expert exercises the same level of `intellectual rigor that characterizes the practice of an expert in the relevant field.'" Id. at 37-38 (¶ 15).
¶ 11. Daubert provided guidance to courts undertaking the reliability determination by providing five factors that may be considered to assess the reliability of proffered testimony. Id. at 36 (¶ 13). These are: (1) whether the theory or technique can be and has been tested; (2) *1106 whether it has been subjected to peer review and publication; (3) whether there is a high known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique enjoys general acceptance in the relevant scientific community. Id. at 37 (¶ 13) (citing Daubert, 509 U.S. at 592-94, 113 S.Ct. 2786). These factors are non-exclusive and non-exhaustive, and their applicability in a particular case "depends on the nature of the issue, the expert's particular expertise, and the subject matter of the testimony." Id. (citing Kumho Tire, 526 U.S. at 151, 119 S.Ct. 1167). The Daubert factors should be considered "`where they are reasonable measures of the reliability of expert testimony.'" Id. at 37 (¶ 13). For example, in McLemore, the court determined the admissibility of a real estate appraiser's valuation method by using the five Daubert factors. Id. at 42 (¶¶ 34-39).
¶ 12. Under Daubert, the trial court's inquiry into the admissibility of expert testimony is to be a flexible one. Id. Despite this flexibility, "the Daubert test has effectively tightened, not loosened, the allowance of expert testimony." Therefore, the fact that a certain type of expert testimony was found to be admissible under Mississippi's former Rule 702 analysis in no way guarantees its admissibility under the modified Daubert standard.
¶ 13. The application of Daubert to the trial court's admission of expert testimony is fact-specific and necessitates a review of the expert witness's trial testimony. McLemore, 863 So.2d at 40 (¶ 28). Thus, I turn to the trial court's exercise of its gatekeeping role in admitting the expert testimony of Carol Langendoen. After a hearing, the trial court accepted Langendoen as an expert in the fields of forensic interviewing and child abuse. In summary, Langendoen's trial testimony consisted of the following information. Langendoen had interviewed N.J., who was seven years old at the time of the interview. During the interview, which was videotaped, Langendoen questioned N.J. about her experiences using a non-suggestive interviewing protocol called "Finding Words." Langendoen testified as to hearsay statements which N.J. made during the interview. She also opined that N.J.'s interview was consistent with a child who had been sexually abused. She based this opinion on N.J.'s report to the police, the consistencies in N.J.'s statement, and N.J.'s ability to describe both the acts of abuse and information peripheral to each act. Further, based on her experience with other children, she did not believe that N.J. had been coached. The videotape of Langendoen's interview with N.J. was played for the jury.[1]
¶ 14. On appeal, Mooneyham does not challenge the relevance of Langendoen's expert testimony, but complains that the testimony was inadmissible because it did not satisfy all of the Daubert factors for assessing reliability. He contends that Langendoen's method has not been tested, that there is no known rate of error, that the method lacks standards for application of the theory, and that there is no single training or credentialing program for forensic interviewing.
¶ 15. Mooneyham's argument does not take into account the flexibility of the modified Daubert inquiry. The five Daubert factors were formulated for assessing the reliability of scientific testimony. But, a witness may qualify as an expert in many *1107 fields in addition to science or medicine.[2] M.R.E. 702 cmt. Therefore, the Daubert factors may be more or less helpful to the gatekeeper depending on the nature of the proffered expert testimony in a particular case. The applicability of the Daubert factors "depends on the nature of the issue, the expert's particular expertise, and the subject matter of the testimony." McLemore, 863 So.2d at 37(¶ 13) (citing Kumho Tire, 526 U.S. at 151, 119 S.Ct. 1167). The factors should be considered only when they are reasonable measures of the reliability of expert testimony. Id. at 37(¶ 13). "Daubert's `list of factors was meant to be helpful, not definitive.'" M.R.E. 702 cmt. (quoting Kumho, 526 U.S. at 151, 119 S.Ct. 1167).
¶ 16. Reviewing the reliability factors that I consider helpful in this case, I agree with the majority's holding that Langendoen's expert testimony was reliable and admissible under Rule 702 and the modified Daubert standard. Langendoen testified about her methods at an admissibility hearing. From this testimony, it is apparent that there are standards controlling Langendoen's forensic interviewing technique. Langendoen stated that "Finding Words" is a protocol for interviewing suspected victims of child abuse in a manner that is neutral and non-leading. She said that the object of a forensic interview is not to arrive at a finding of abuse, but instead to allow the child to "tell if something happened." She stated that research had shown that a child's statement is most reliable when it comes from the child's own memory, and that the "Finding Words" protocol had been designed to allow the child to relate his or her own experiences from memory in a non-suggestive environment.
¶ 17. Langendoen stated that the interviewer must adhere to a specific protocol. First, the interviewer establishes a rapport with the child. During this time, the interviewer is able to observe the child's ability to communicate, social skills, and cognitive ability. Next, by using drawings, the interviewer asks the child to name different parts of the body. The interviewer uses the child's names for body parts for the duration of the interview. Then, the interviewer and the child discuss different types of touching. The interviewer asks the child which places on the child's body the child would not like to be touched. In the next stage, the child tells if he or she has ever been touched in those areas, and the child is allowed to communicate what occurred. In the last stage, the interviewer thanks the child for coming, provides some safety information, and ends the interview. Langendoen testified that the components of the "Finding Words" protocol were research-based.
¶ 18. Langendoen testified that, after conducting a "Finding Words" interview, her training and experience enable her to render an opinion as to whether the child's statement was consistent with the child having been abused. To formulate this opinion, Langendoen evaluates factors including the consistency of the statement, the child's nonverbal behavior, possible alternative explanations for the abuse allegation, and the child's ability to provide details about what occurred before, during and after the alleged abuse. The evaluation of these factors is part of the "Finding Words" training.
¶ 19. Langendoen's testimony also established that the protocol had been subjected to peer review and publication. Langendoen stated that she had attended a forty-hour training course to learn the *1108 "Finding Words" protocol and had attended three hundred and forty hours of continuing education in the areas of forensic interviewing and child abuse. She said that Mississippi was one of six states certified to teach the protocol and that she was one of nine faculty members in the state qualified to train others in the method. Additionally, she stated that researchers investigating false allegations of child abuse due to suggestive interviewing techniques had reviewed and approved the "Finding Words" protocol.
¶ 20. Further, Langendoen's testimony indicated that the "Finding Words" protocol had been generally accepted in the field of forensic interviewing. Langendoen stated that the protocol was nationally recognized and generally accepted as being reliable. On cross-examination, Mooneyham questioned Langendoen using practice notes from the State of North Carolina concerning forensic interviewing. The notes stated that there were many ways of conducting forensic interviews, but no single way was endorsed unanimously by experts in the field. However, the notes also stated that the "Finding Words" protocol was a "gold standard" for training in forensic interviewing.
¶ 21. Langendoen admitted that the "Finding Words" protocol had not been tested for accuracy and that it was not amenable to a determination of a rate of error. I do not believe that the absence of proof of accuracy testing and rate of error rendered Langendoen's testimony unreliable. A "Finding Words" interviewer's opinion that a child's statement was consistent with abuse is based on the interviewer's training and experience with abused children. This type of testimony is nonscientific and is not amenable to verification and testing pursuant to the scientific method. Therefore, the accuracy testing and rate of error factors are not reasonable measures of the reliability of Langendoen's testimony.
¶ 22. It is my opinion that Langendoen's expert testimony concerning the "Finding Words" protocol was reliable when examined under the modified Daubert standard. Further, the videotape of Langendoen's interview with N.J. supports the conclusion that Langendoen applied the "Finding Words" protocol reliably in her interview with N.J. For these reasons, I respectfully concur in the majority's conclusion that the trial court's admission of Langendoen's expert testimony was not an abuse of discretion.
MYERS, P.J., BRIDGES, IRVING, GRIFFIS, AND BARNES, JJ., CONCUR. ISHEE, J., CONCURS IN PART.
NOTES
[1] Langendoen rendered no testimony concerning D.J. because D.J.'s interview had been conducted by another social worker. That social worker was unavailable at the trial. Thus, Mooneyham's appeal relates solely to his conviction for fondling N.J.
[2] The comment to Rule 702 cites the fields of real estate, cotton brokering, auto mechanics and plumbing as examples of non-scientific fields of expertise.