CARLTON, J.,
 

 for the Court.
 

 ¶ 1. A Pearl River County grand jury indicted Robert L. Grant on September 30, 2004, for capital murder. The indictment was later amended to charge Grant as a habitual offender. Grant was convicted after a jury trial in August 2006 in the Pearl River County Circuit Court. He was sentenced as a habitual offender to serve a sentence of life imprisonment in the custody of the Mississippi Department of Corrections without eligibility for parole. Aggrieved, Grant appeals, alleging six errors he believes warrant reversal of his conviction. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On the night of July 16, 2004, Grant and Arthur Joshua had a friend, Shannon Landry, drive them to the home of Terry Adams and his roommates so they could rob the occupants of the home. Landry knew that Adams kept a safe with money and drugs in his bedroom at the home. Grant and Joshua arrived at the home, went in through the front door, and proceeded to rob the occupants. One of the intruders hit one of the occupants, who had been asleep in the living room of the home, over the head with a two-by-four. That occupant never saw either of the men, but the occupant recognized Joshua’s voice and identified him as one of the intruders. At some point during the robbery, Joshua was shot. There was evidence presented at trial from which the jury could have reasonably found that Grant shot Joshua. Joshua’s body was dragged into the wooded area behind the house before the police arrived. Grant escaped into the wooded area and made his way back to Landry’s car. Grant and Landry left the scene together.
 

 ¶ 3. The witnesses to the crime claimed that they did not know that anyone had been shot inside the house. There was no blood in the house. However, there were bullet casings and projectiles found inside the house, one with blood on it. Grant was convicted of capital murder and sentenced as a habitual offender to life imprisonment in the custody of the Mississippi Department of Corrections without eligibility for parole.
 

 ¶ 4. On appeal, Grant asserts six errors: (1) the Mississippi felony-murder portion of the capital murder statute is not applicable in the case of the death of a co-conspirator; (2) the jury was not properly instructed on capital murder by the trial court — instruction S — 13; (3) the trial court erred in not allowing Grant’s expert to give his opinion as to his first two conclusions; (4) the trial court erred in allowing the inadmissable hearsay testimony of Chris Thomas; (5) the trial court erred in sentencing Grant as a habitual offender; and (6) the verdict of guilty was against the overwhelming weight of the evidence.
 

 
 *216
 
 I. Whether the Mississippi capital murder statute is applicable in the case of the death of a co-conspirator.
 

 ¶ 5. Grant claims that the capital murder statute in Mississippi should not apply when the deceased is a co-conspirator in the underlying felony and not an intended victim. Mississippi Code Annotated section 97-3-19(2)(e) (Rev.2006) defines capital murder, and reads, in part:
 

 (2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
 

 (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsen-sual unnatural intercourse with mankind, or in any attempt to commit such felonies[.]
 

 Grant argues that the Mississippi Legislature did not intend for the felony-murder portion of the capital murder statute to apply in cases where the co-conspirator dies during the commission of one of the enumerated felonies. Grant contends that the capital murder statute, and specifically the felony-murder portion, was designed to protect the citizenry or the innocent victims of dangerous felonies. It was not, he argues, designed to protect co-conspirators from each other. Further, he argues that a finding that the capital murder statute applies when the victim was also a co-conspirator is at odds with the United States Supreme Court’s findings in
 
 Enmund v. Florida, 458 U.S.
 
 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and
 
 Tison v. Arizona,
 
 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Those decisions address the appropriateness of imposing the death penalty on a co-conspirator whose involvement in the felony was relatively minor. Grant, however, was not given the death penalty. He was sentenced to life imprisonment without eligibility for parole.
 

 ¶ 6. The statute does not address whether the victim in a felony-murder case must be innocent. The statute simply states that capital murder is the “killing of a human being without authority of law by any means or in any manner” when committed, regardless of intent, by a person engaged in one of several enumerated felonies. Robbery is one of the enumerated felonies. The jury found that Grant killed Joshua during the commission of a robbery. This assignment of error is without merit.
 

 II. Whether the trial court erred in granting jury instruction S-13.
 

 ¶ 7. In his second assignment of error, Grant argues that the jury received an improper jury instruction on capital murder. Grant argues that jury instruction S-13 confused the elements of murder and capital murder. Grant did not make an objection to the jury instruction before the trial court. Grant objected to the denial of his peremptory instruction to find him not guilty, and he objected to two instructions that dealt with lesser-included offenses. He did not, however, object to the instruction that he now argues was erroneous. Because he did not raise an objection before the trial court, Grant must rely on the plain-error doctrine to raise the issue on appeal.
 
 Smith v. State,
 
 907 So.2d 389, 393 (¶ 8) (Miss.Ct.App.2005) (citing
 
 Watts v. State,
 
 733 So.2d 214, 233 (¶ 53) (Miss.1999) (overruled in part on other grounds)). “The plain[-]error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice.”
 
 Id.
 
 (citing
 
 Williams v. State,
 
 794 So.2d 181, 187 (¶ 23) (Miss.2001)). We apply the plain-
 
 *217
 
 error doctrine only when the error affects a defendant’s substantive/fundamental rights.
 
 Id.
 
 (citing
 
 Williams,
 
 794 So.2d at 187 (¶ 23)).
 

 ¶ 8. The instruction at issue stated:
 

 The court instructs the jury that if you find from the evidence in this case, beyond a reasonable doubt, that: on or about the 17th day of July 2004 in Pearl River County Mississippi, the deceased, Arthur Joshua, was a living human being; and was killed, without authority of law; while the defendant, Robert L. Grant, was engaged in the commission of a robbery, when the mortal or fatal shot was fired, whether or not the defendant had any intention of actually killing Arthur Joshua then you shall find the defendant Robert L. Grant
 
 guilty of murder.
 

 (Emphasis added). Grant argues that because the last phrase of the instruction is simply “guilty of murder,” rather than “guilty of capital murder,” the jury was improperly instructed on the proof required to convict him.
 

 ¶ 9. The Mississippi Supreme Court has articulated our standard of review for challenges to jury instructions:
 

 When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed. Similarly, this Court has stated that “in determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” In other words, if all instructions taken as a whole
 
 fairly, but not necessarily perfectly,
 
 announce the applicable rules of law, no error results.
 

 Smith v. State,
 
 835 So.2d 927, 934(¶ 23) (Miss.2002) (citations omitted) (emphasis added).
 

 ¶ 10. Jury instruction D-8 corrects the omission of the earlier instruction. That instruction stated:
 

 If you believe from the evidence in this case that the [Sjtate has failed to prove beyond a reasonable doubt that Robert Grant participated in a robbery at 123 Ed Reid Road in Lumberton, Mississippi, on July 17, 2004, then you must vote not guilty to the charge of capítol [sic] murder in this case.
 

 When reading the jury instructions as a whole, we find that the jury was properly instructed as to the elements of the crime charged. Grant was indicted on a charge of capital murder, and jury instructions S-13 and D-8, when read together, properly instructed the jury as to the elements of capital murder and as to what the jury was required to find in order to convict Grant. We find no error in the jury instructions as given. This issue is without merit.
 

 III. Whether the trial court erred in not allowing Grant’s expert witness to give opinion testimony as to his first two conclusions.
 

 ¶ 11. Grant claims that the trial court erred in not allowing Brent Turvey to testify as to the first two conclusions related to his investigation of the crime scene. “[T]he admission of expert testimony is within the sound discretion of the trial judge.”
 
 Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 34(¶ 4) (Miss.2003). “Therefore, the decision of a trial judge will stand ‘unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ”
 
 Id.
 

 ¶ 12. Mississippi Rule of Evidence 401 defines relevant evidence as “evidence having any tendency to make the existence of
 
 *218
 
 any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Mississippi Rule of Evidence 702 addresses expert witness testimony and states:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
 

 ¶ 13. Rule 702 was modified in 2003 in response to the United States Supreme Court’s ruling in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
 
 See
 
 M.R.E. 702 cmt. This Court explained the test required by
 
 Daubert
 
 in
 
 Mooneyham v. State,
 
 915 So.2d 1102, 1104(¶ 3) (Miss.Ct.App.2005) as follows:
 

 [The] analytical framework provided by the modified
 
 Daubert
 
 standard requires the trial court to perform a two-pronged inquiry in determining whether the expert testimony is admissible under Rule 702. Under M.R.E. 702, expert testimony should be admitted only after a two[-]pronged inquiry. First, the witness must be qualified as an expert because of the knowledge, skill, experience, training, or education he or she possesses. Second, the witness’s scientific, technical, or other specialized knowledge must assist the trier of fact.
 

 (Internal citations and quotations omitted). In the instant case, the trial court held a hearing before Turvey was allowed to testify to determine which opinions he would be allowed to offer in front of the jury. The trial judge refused to allow Turvey to testify regarding the methods the investigators used in collecting evidence and investigating the crime scene. Turvey was also prevented from testifying about the investigators’ failure to collect evidence Grant saw as potentially exculpatory. The trial judge felt that this testimony would not assist the jury, so he excluded it.
 

 ¶ 14. The trial judge’s ruling prevented Turvey from testifying regarding two conclusions. First, he believed that the law enforcement officer’s efforts to secure and process the crime scene were almost nonexistent; consequently, they did not meet the national standards. Second, he believed that the failure to meet these standards led to key items of potentially exculpatory physical evidence not being documented, collected, or tested. The trial judge found this testimony to be irrelevant, but he allowed Turvey to testify regarding his other conclusions. Because we find that the trial judge did not abuse his discretion in excluding certain testimony from Turvey, we find that this issue is without merit.
 

 IV. Whether the trial court erred in allowing the inadmissable hearsay testimony of Chris Thomas.
 

 ¶ 15. “The standard of review regarding the admission or exclusion of evidence is abuse of discretion.”
 
 Winding v. State,
 
 908 So.2d 163, 168 (Miss.CtApp.2005) (citing
 
 Ware v. Entergy Mississippi, Inc.,
 
 887 So.2d 763, 766(¶ 6) (Miss.2003)).
 

 ¶ 16. The State called Chris Thomas to testify against Grant. Thomas testified that on the night of the robbery and murder, Landry called him and told him to meet her at an apartment complex in Lumberton. Thomas arrived, and Landry was there with Grant. During their meeting, Grant stated to Thomas that he and Joshua had been running through the
 
 *219
 
 woods and then split up. Grant then stated that Joshua had been shot.
 

 ¶ 17. Grant objected to the testimony at trial on the ground that the statements were hearsay. The trial judge allowed the testimony over Grant’s objection as an exception to the hearsay rule. Mississippi Rule of Evidence 801(d)(2) provides an exception to the general rule of excluding hearsay evidence when the statement was an admission by party-opponent. In
 
 Conley v. State,
 
 790 So.2d 773, 787(¶ 43) (Miss.2001), the supreme court held that “a statement is not hearsay if it is the party’s own statement offered against him. It is irrelevant that the defendant did not intend it to be a statement against interest and that it was self-serving when made.”
 
 Id.
 
 (citing
 
 Thornhill v. State,
 
 561 So.2d 1025, 1029 (Miss.1989)). The trial judge did not abuse his discretion in allowing the testimony under Mississippi Rule of Evidence 801(d)(2).
 
 See McGee v. State,
 
 853 So.2d 125, 131-32(¶ 19) (Miss.Ct.App.2003) (holding that there is no hearsay issue regarding testimony about what the defendant told the witness). Therefore, this issue is without merit.
 

 V. Whether the trial court erred in sentencing Grant as a habitual offender.
 

 ¶ 18. In his fifth assignment of error, Grant contends that his five prior convictions were not properly authenticated before the jury to be admissible against him. The prosecution offered three “pen packs” prepared by the Mississippi Department of Corrections to show that he had prior felony convictions. The supreme court has held that “pen packs” are appropriate evidence of prior convictions in order to enhance sentencing.
 
 Russell v. State,
 
 670 So.2d 816, 832 (Miss.1995). Grant claims that two of the pen packs were signed only by the custodian of records, not by an official of the department of corrections. Grant claims that under Rule 902(l)-(4) of the Mississippi Rules of Evidence, the pen packs were not sufficiently authenticated and should not have been admitted into evidence. Rule 902 applies to documents that could be considered self-authenticating. Authentication is required under Rule 901 of the Mississippi Rules of Evidence. That rule states:
 

 (a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 

 (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 

 (1)
 
 Testimony of a Witness With Knowledge.
 
 Testimony that a matter is what it is claimed to be.
 

 M.R.E. 901(a) and (b)(1).
 

 ¶ 19. The State called Ron Montgomery as a witness to authenticate the pen packs. Montgomery was Grant’s probation and parole officer on a prior conviction. He testified that the prior convictions were part of a file he received on Grant when he became his parole officer. The trial judge did not abuse his discretion in allowing the pen packs into evidence. This issue is without merit.
 

 VI. Whether the verdict of guilty was against the overwhelming weight of the evidence.
 

 ¶ 20. Grant’s final challenge to his conviction alleges that the jury’s verdict was contrary to the overwhelming weight of the evidence. This Court has articulated the standard of review for such challenges as follows:
 

 In deciding whether the weight of the evidence can sustain the verdict, we ac
 
 *220
 
 cept as true the evidence supporting the verdict, including all reasonable inferences arising from that evidence. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court order a new trial.
 

 Campbell v. State,
 
 749 So.2d 1208, 1213-14(¶ 27) (Miss.Ct.App.1999) (citing
 
 Collier v. State,
 
 711 So.2d 458, 461 (Miss.1998)).
 

 ¶ 21. To support his argument that the verdict was against the overwhelming weight of the evidence, Grant points to the testimony of the defense witnesses whose testimony contradicted the testimony of the State’s witnesses. One witness testified that Grant had been playing cards with her on the night of the robbery and murder. Another witness testified that after playing cards, Grant came to her home and remained with her the entire night. Furthermore, Grant argues that Adams tested positive for gunshot residue after the incident. However, the evidence presented to the jury showed how the residue could have been transferred from Grant to Adams during the course of the robbery.
 

 ¶ 22. We are not persuaded by Grant’s arguments. Considering the evidence presented in the light most favorable to the State, we find that there was sufficient evidence to support the jury’s verdict. Two witnesses, Landry and Adams, testified that Grant was at the scene of the robbery and murder. Landry drove Grant and Joshua to the home to commit the robbery and waited on the men to complete the crime. She drove Grant away from the scene. Additionally, Thomas testified that Grant admitted to being at the scene with Joshua that night.
 

 ¶ 23. Adams, one of the robbery victims, testified that Grant was the man who robbed the home. Adams recognized Grant because he had known him for many years. Adams testified that he had been cleaning his room the night of the robbery. He heard his roommate scream, and then he heard three or four gunshots fired. Then, Grant came immediately into his room with a nine millimeter handgun demanding the contents of his safe. Adams testified that Grant came into his room pointing the gun at him. Grant ordered Adams to get down on the floor, and then Grant began to intimidate him by touching the gun to his body. Adams stated, “He pointed it directly at me, and after he got me down, and I gave him all the contents out of my safe, he started playing with the gun up and down my spinal cord and stuff.” Adams testified that Grant then hog-tied him and put a pillowcase over his head. Grant continued to touch Adams with the gun. David Whitehead, an analyst with the Mississippi Crime Laboratory testified that he had performed the gunshot residue tests. He explained to the jury that a person can have gunshot residue on his body by being in close proximity to a weapon being fired, by actually firing a weapon, or by touching something that has gunshot residue on it. Based on the testimony of Adams and Whitehead, the jury could easily infer that the contact Adams had with Grant and with the gun during the course of the robbery left the gunshot residue on Adams’s hands.
 

 ¶ 24. Our supreme court has held that “[t]he jury must be left to resolve matters regarding the weight and credibility of the evidence.”
 
 Stevenson v. State,
 
 733 So.2d 177, 186(¶ 37) (Miss.1998) (citing
 
 Hiter v. State,
 
 660 So.2d 961, 964 (Miss.1995)). Furthermore, “[o]nce a case is submitted to the fact finder, ‘any factual disputes are properly resolved by the jury and do not mandate a new trial.’ ”
 
 Id.
 
 (quoting
 
 Clark v. State,
 
 693 So.2d 927, 931 (Miss.1997)). There was more than suffi
 
 *221
 
 cient evidence to allow the verdict to stand. Therefore, this issue is without merit.
 

 CONCLUSION
 

 ¶ 25. Because we can find no reversible error as to any of Grant’s assignments of error, we affirm the judgment of the trial court.
 

 ¶ 26. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.